UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DELTA LOCUM TENENS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:17-fj-00004-R |
| | ) | |
| CIMARRON COUNTY HEALTH AUTHORITY, | ) | |
| d/b/a CIMARRON MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER**

COMES NOW NewLight Healthcare, Inc., and for its Amended Motion for Temporary Restraining Order, would state:

1. On December 6, 2017 NewLight Healthcare, Inc., filed a Motion to Intervene in this instant matter [Doc.17]. To date, said motion has not been ruled-upon.

2. The basis of NewLight's motion is that NewLight is a secured creditor of Defendant, Cimarron County Health Authority, a community hospital public trust created under Oklahoma law. NewLight's security interest is in "all present and future accounts receivable of Debtor and the proceeds therefrom." NewLight filed a UCC Financing Statement with the Oklahoma County Clerk on November 1, 2016. NewLight contends that that security interest is superior to the subsequent judgment-lien of Plaintiff; specifically, Plaintiff's obtained a judgement by default on July 13, 2017 in the case of *Delta Locum Tenens, LLC v. Cimarron County Health Authority,*

1

United States District Court for the Northern District of Texas, Case No. 3:17-cv-01438-M (Hon. Barbara M.G. Lynn).

3. NewLight secured Oklahoma counsel (the undersigned) as soon as reasonably possible after learning that Plaintiff had registered a foreign judgment in this Court and had, furthermore, filed a Garnishment Affidavit seeking to garnish the bank account of Defendant with First State Bank.

4. A copy of the motion was served on all parties, including First State Bank, by certified mail, by depositing the same in the United States Mail.

5. On Thursday, December 7, 2017, counsel for Plaintiff, Jacob Kring, contacted and emailed the undersigned. The undersigned was on the road to a client consultation in Tillman County, Oklahoma. Upon the return trip, that day, the undersigned telephoned Mr. Kring. During that telephone conference, the undersigned advised Mr. Kring of the following:

   a. That the undersigned's firm had been retained to file a motion to intervene in the garnishment action;

   b. That it appeared that Plaintiff had served First State Bank on November 27, 2017 with the Garnishment Affidavit, and that NewLight had concerns that the Garnishment Affidavit attempted to garnish funds that were, in whole or in part, collateral pledged by the November 1, 2016 UCC Financing Statement;

   c. That the undersigned filed the Motion to Intervene as soon as possible in order to advise all parties of the existence of NewLight's claim; and,

2

    d. That the undersigned (i) agreed that additional details should be provided—such as whether all, and if not all, what part of the First State Bank account is pledged as collateral—and, (ii) would need to discuss with his client more specific details; and,

    e. That the undersigned would discuss with his client and that Mr. Kring and the undersigned would speak the week of December 11, 2017.

6. Mr. Kring sent an email following up the telephone conference of December 7, 2017, providing a proposed agenda for the discussion on the week of December 11, 2017. *See* **Exhibit 1**.

7. The undersigned had deposition most of the day December 11, 2017, so the undersigned planned to discuss details with his client on December 12, 2017.

8. On December 11, 2017, in the morning, the undersigned was advised by NewLight that First State Bank had now had transferred out of Defendant's account the amount of the garnishment.

9. Shortly after learning about the transfer of funds, prior to his deposition in an unrelated matter on December 11, 2017, the undersigned contacted Mr. Kring to advise that money had been moved. Mr. Kring advised that he was not aware of the transfer. The undersigned stated that he understood that Mr. Kring's client requested additional details about the nature and extent of the secured transaction and, furthermore, that the undersigned would be speaking to his client on Tuesday, December 12, 2017 to learn those details. During this telephone conference, the undersigned requested that, to the extent Plaintiff received funds, to hold such funds

3

pending resolution of this issue. Absent an agreement, the undersigned advised he would have to seek a restraining order. Mr. Kring requested that the undersigned send an email for him to pass along to his client, which the undersigned did. *See* **Exhibit 2**.

10. After receipt of the undersigned's email making the request for Plaintiff to hold funds received, Mr. Kring responded with an email stating he needed additional information before making any decisions. Mr. Kring also stated that he was not sure "how the alternative of sending a Sheriff to start seizing assets would be better for your client or Cimarron." *See* **Exhibit 3**.

11. At a break during the deposition on December 11, the undersigned again stated that he agreed to provide information, but (i) NewLight had a duly filed security interest in funds, (ii) we had received word bank had transferred funds already, (iii) that my clients needed to reach a provisional agreement about holding funds or my client needed to file for relief with the Court. *See* **Exhibit 4.**

12. Mr. Kring responded to the email by again demanding answers now (to questions that the Mr. Kring knew the undersigned would be discussing with his client tomorrow). *See* **Exhibit 5**.

13. The undersigned attorney, by signing this pleading, certifies that good faith efforts have been made to resolve the issue before seeking the relief requested in this motion.

14. On December 11, 2017, the undersigned filed a Motion for Temporary Restraining Order [Doc.18]. On December 12, 2017 counsel for NewLight and counsel for

Plaintiff participated in a telephonic conference with the Court during which time counsel for the Plaintiff advised the Court that he had deposited the garnished funds in his trust account and would hold them. Meanwhile, the Court directed the undersigned to file an amended Motion for Restraining Order providing additional details. This instant motion is that amendment.

15. Attached to this Amended Motion as **Exhibit 6** is the Affidavit of Todd Biederman, President and CEO of NewLight Healthcare, LLC. In the Affidavit, Mr. Biderman asserts:

    a. He is President and CEO of NewLight Healthcare, LLC, and he has knowledge of the things expressed in this Affidavit.

    b. Cimarron County Health Authority is a community hospital public trust authority created under Oklahoma law.

    c. Cimarron Memorial Hospital is a hospital owned by Cimarron County Health Authority and is located in Boise City, Oklahoma. Upon information and belief, the hospital is the only hospital providing critical care in Cimarron County and is one of the largest, if not the largest, employers in Cimarron County.

    d. NewLight Healthcare, LLC, is a limited liability company with its principal place of business being in Texas. Cimarron County Health Authority contracts with NewLight Healthcare, LLC, to manage the operation of Cimarron Memorial Hospital.

e. Like many rural hospitals, finances have been difficult. On October 1, 2016, NewLight agreed to provide certain financing to Cimarron County Health Authority pursuant to a Promissory Note and Line of Credit Agreement dated October 1, 2016. That Promissory Note contained a security agreement between the parties securing the debt. Cimarron County Health Authority agreed to pledge, as collateral "all present and future accounts receivable of the Borrower and the proceeds therefrom." A true and correct copy of the Promissory Note and Line of Credit Agreement is attached to this Affidavit as Exhibit A. Currently, Cimarron County Health Authority owes approximately $111,512.60 under the Line of Credit. (Cimarron County Health Authority owes NewLight amounts well in excess of this for management services.)

f. On November 1, 2016, a UCC Financing Statement identifying the collateral was filed with the Oklahoma County Clerk.

g. Cimarron County Health Authority maintains a banking account with First State Bank in Boise City, Oklahoma. NewLight is aware of, and by virtue of its management agreement, has certain access to, that bank account. Every amount ever deposited into that account is directly related to payments made on accounts receivable by either health insurers (private insurance, such as Aetna, Blue Cross Blue Shield, etc, and public insurance, such as Medicare) or by self-pay cash patients paying for services rendered. If any amount is

      deposited in that account that is not related to a receivable, such amount is *de minimus*.

  h. The monies garnished by Plaintiff in this matter are collateral directly covered and secured by the October 1, 2016 security agreement and evidenced by the UCC Financing Statement filed on November 1, 2016.

  i. Moreover, the current garnishment of said funds works an immediate and unspeakable hardship for the Cimarron Memorial Hospital. The garnished funds are necessary for the hospital to make its payroll and pay other expenses of operating. All of the garnished funds are needed to continue to operate the hospital, pay employees, and provide services to the people of the county.

  j. Upon information and belief, First State Bank tendered a certified check on December 7, 2017 to counsel for Plaintiff in the amount of $98,000.00 representing garnished funds from the bank account.

  k. The garnished property is money, which is highly liquid. No further action or time would be necessary for the Plaintiff in this case to convert the property to cash and use it. Therefore, immediate relief is needed, or there would be no recourse for NewLight.

16. The November 1, 2016 UCC Financing Statement is attached hereto as **Exhibit 7**.

## ARGUMENT AND AUTHORITY

Plaintiff was aware on December 6, 2017 of the claim by NewLight that it had a security interest in and to "accounts receivable and proceeds therefrom" of the Defendant.

7

Monies held by First State Bank (the garnishee) in whole or in part are pledged as security. This security interest, granted by a promissory note, and evidenced by a UCC Financing Statement filed November 1, 2016, is prior and superior to Plaintiff's judgment lien.

Upon learning that First State Bank had thereafter transferred certain funds, the undersigned attempted to reach a reasonable provisional agreement with Plaintiff with regard to any funds Plaintiff received in order to avoid seeking a restraining order. The factual history described above indicate that possibility. However, on the afternoon of December 11, 2017, NewLight's counsel learned that Plaintiff was reluctant to make such a provisional agreement. Therefore, since First State Bank has transferred monies pledged (and monies being highly liquid), it is urgent that NewLight obtain provisional relief in the form of a restraining order.

It is possible that in the next several days, much of this will be moot, given that the undersigned plans to further conference with his client and, furthermore, conference with Plaintiff's counsel. Unfortunately, given the nature of the collateral seized (monies which is highly liquid), NewLight felt it had little choice than to file this instant motion after making a good faith attempt to reach an agreement. For this reason, NewLight requests that the Court enter an order temporarily restraining the use of the garnished funds until such time as the issues raised in the Motion to Intervene are resolved by the Court. NewLight also requests and expedited hearing on this issue.

Rule 64(b) of the Federal Rules of Civil Procedure authorize the Court, without notice to the adverse party, to issue a temporary restraining order after pleading is filed setting forth verified facts and containing a certification of movants' counsel the efforts

made to give notice and why an order should issue without notice. NewLight contends that Plaintiff has notice of this issue for the reasons already identified herein; nevertheless, NewLight has attached hereto an affidavit of its President and CEO clearly setting forth facts showing that an immediate and irreparable harm would occur to not only its own secured position but also to the operation of Cimarron Memorial Hospital if the garnished funds are allowed to remain with Plaintiff. The money removed from the account is money needed to pay operational expenses of the hospital and payroll. Plaintiff does not have a superior right in and to these funds; rather, Plaintiffs' interest is inferior. Secondly, the undersigned certifies that a good-faith effort has been made to resolve this matter prior to seeking provisional relief.

WHEREFORE, premises considered, NewLight Healthcare, Inc., prays that the Court grant the relief requested in this Motion.

Respectfully submitted,

/s/Brandon Powell Wilson
Brandon Powell Wilson, OBA No. 19599
WHITWORTH, WILSON & EVANS, PLLC
3847 South Boulevard, Suite 100
Edmond, OK  73013
405-415-4222          Telephone
405-415-4222          Facsimile
brandon@wwefirm.com
clint@wwefirm.com
***Attorneys for Intervenor***
***NewLight Healthcare, LLC***

## **Certificate of Service**

The undersigned certifies that a true and correct copy of the foregoing was served on December 15, 2017, as follows:

*Via Notice of Electronic Filing*
Lori Sander, OBA No. 16577
Jacob B. Kring, Tex. No. 24062831

*Via United States Mail*
Lori A. Sander
Felker, Sander & Associates, P.C.
3934 NW 36th Street
Oklahoma City, Oklahoma  73112

Jacob B. Krieg
Hedrick Kring, PLLC
1700 Pacific Avenue, 4650
Dallas, Texas  75201

First State Bank
ATTN:  Cerita Walker
20 SW Square
Boise City, Oklahoma  73933

Cimarron County Health Authority
PO Box 1059
Boise City, OK  73933

/s/Brandon Powell Wilson