IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DELTA LOCUM TENENS, LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:17-fj-00004-R |
| | § | |
| CIMARRON COUNTY HEALTH | § | |
| AUTHORITY *d/b/a* CIMARRON | § | |
| MEMORIAL HOSPITAL, | § | |
| | § | |
| DEFENDANT. | § | |

**PLAINTIFF'S BRIEF IN RESPONSE TO MOTION OF NON-PARTY**
**NEWLIGHT HEALTHCARE, LLC TO INTERVENE**

**Jacob B. Kring** (admitted *Pro Hac Vice*)
Texas State Bar No. 24062831

**HEDRICK KRING, PLLC**
1700 Pacific Ave., Suite 4650
Dallas, Texas 75201
Telephone: (214) 880-9600
Telecopier: (214) 481-1844
E-mail: jacob@hedrickkring.com

**ATTORNEY FOR PLAINTIFF**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................................. ii

**INTRODUCTION** ............................................................................................................. 1

**FACTUAL AND PROCEDURAL BACKGROUND** ..................................................... 2

    A.    Defendant Keeps the Money Generated From Plaintiff's Services Rather than Paying Plaintiff .......................................................................................... 2

    B.    A Judgment is Rendered Agaisnt Defendant, Certified in This District, and Plaintiff Attempts to Collect on the Judgment ...................................................... 3

    C.    The Threadbare Post-Judgment Motion to Intervene .......................................... 4

    D.    Non-Party Post-Judgment Request for Restraining Order .................................. 5

    E.    The Management Company's True Role of Managing the Defendant and not that of a Lender Emerges ................................................................................. 6

    F.    The Management Company and Defendant's Joint Efforts to Stifle Information to Plaintiff and the Court ....................................................................... 7

**ARGUMENT & AUTHORITIES** .................................................................................... 9

    A.    Legal Standard for Intervention ........................................................................... 9

    B.    The Post-Judgment Motion to Intervene is Untimely ....................................... 10

    C.    The Post-Judgment Motion to Intervene Fails to Comply with Rule 24(c) ........ 11

    D.    The Post-Judgment Motion to Intervene would Prejudice Plaintiff .................... 13

    E.    The Management Company Has Not Shown it Would be Harmed .................... 14

**CONCLUSION** ............................................................................................................... 15

**CERTIFICATE OF SERVICE** ..................................................................................... 16

# **TABLE OF AUTHORITIES**

**CASES**                                                     **PAGE(S)**

*Alvarado v. J.C. Penney Co., Inc.*,
997 F.2d 803 (10th Cir. 1993) .................................................................................................. 13

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*,
407 F.3d 1091 (10th Cir. 2005) .................................................................................................. 9

*In re S.E.C.*,
253 Fed. App'x 752, 755 (10th Cir. 2007) ............................................................................... 13

*Miami Cnty. Nat. Bank of Paola, Kan. v. Bancroft*,
121 F.2d 921 (10th Cir. 1941) ............................................................................................ 12, 13

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*
619 F.3d 1223 (10th Cir. 2010) .............................................................................................. 9, 11

*Southern Utah Wilderness Alliance v. Kempthorne*,
525 F.3d 966 (10th Cir. 2008) .................................................................................................. 11

*Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*,
No. 09-4158-SAC, 2011 WL 4688857 (D. Kan. Oct. 5, 2011) ................................... 12, 13

*United States v. Associated Milk Producers, Inc.*
534 F.2d 113 (8th Cir. 1976) .................................................................................................... 10

*United States v. Ritchie Special Credit Invs., Ltd.*
620 F.3d 824 (8th Cir. 2010) .................................................................................................... 10

**RULE**

FED. R. CIV. P. 24 ........................................................................................................................ 9

Plaintiff Delta Locum Tenens, LLC, ("Plaintiff") files this Brief in Response to Motion of Non-Party NewLight Healthcare, LLC to Intervene (the "Response"), and respectfully states as follows:

## I.
### INTRODUCTION

The Management Company NewLight Healthcare, LLC (the "Management Company") was responsible for, not just aware of, the judgment entered in this case against Defendant Cimarron County Health Authority *d/b/a* Cimarron Memorial Hospital ("Defendant"). The Management Company hid behind the log, and through Defendant, accepted Plaintiff's services without paying for them. They continued to hide behind the log in the underlying lawsuit with Defendant, and even hid behind the log in the collection proceeding in this Court until only recently. The Management Company's relationship is far more intertwined with the Defendant than its initial representations to the Court that it is simply a lender. Instead, at all relevant times the Management Company has been in control of and responsible for the decisions of Defendant, including the decisions not to pay Plaintiff for its services, to allow a judgment to be entered against Defendant, and not to respond to discovery requests that would have revealed the true nature of the relationship between the Management Company and the Defendant.

The Management Company's post-judgment motion to intervene should be denied for four independent reasons. First, the Management Company's post-judgment efforts to intervene are untimely after having been aware of and creating the litigation giving rise to this matter. Second, the Management Company's Motion to Intervene fails because it

does not contain a pleading asserting any claim or defense against any of the parties in this matter.  Third, allowing the Management Company to intervene at the eleventh hour would gravely prejudice Plaintiff's right to collect on its judgment.  Fourth, and finally, the Management Company has not made a showing it would be harmed by the denial of its Motion to Intervene.  For all of these independent reasons, the Motion to Intervene should be denied.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

**A.**     **Defendant Keeps the Money Generated From Plaintiff's Services Rather Than Paying Plaintiff.**

Plaintiff is the Country's premier temporary staffing company.  Plaintiff contracts with healthcare facilities in need of temporary staffing.  Plaintiff matches healthcare providers with healthcare facilities.  More than a year ago, on August 15, 2016, Plaintiff, on the one hand, and Defendant, on the other, entered into an agreement whereby Plaintiff agreed to refer healthcare providers to Defendant for staffing assignments, and in exchange, Defendant agreed to pay Plaintiff for its healthcare providers.  *See* Delta Locum Tenens Service Agreement (the "Agreement"), attached hereto as Exhibit A, at ¶ 3.

Plaintiff staffed a nurse practitioner with Defendant that worked from approximately October 13, 2016, through to May 2, 2017.  In a typical circumstance, a healthcare facility like Defendant bills for the services of Plaintiff's healthcare provider and then pays Plaintiff for the services of Plaintiff's healthcare provider.  Here, on information and belief, Defendant billed for Plaintiff's nurse practitioner and pocketed

the money or sent that money to the Management Company. In total, the outstanding invoices owed to Plaintiff amounted to $93,515.10. After Defendant refused to pay Plaintiff for the services it provided, Plaintiff was forced to file a lawsuit styled *Delta Locum Tenens, LLC v. Cimarron County Health Authority d/b/a Cimarron Memorial Hospital,* Civil Action No. 3:13-cv-01438-M, in the United States District Court for the Northern District of Texas (the "Underlying Lawsuit").

B.  **A Judgment is Rendered Against Defendant, Certified in This District, and Plaintiff Attempts to Collect on the Judgment.**

The Underlying Lawsuit was filed on May 31, 2017, and subsequently served on Defendant. A judgment was then entered on July 13, 2017. *See* Default Judgment, attached hereto as Exhibit B. Then on August 30, 2017, the Clerk's Certification of a Judgment to be Registered in Another District was filed in this Court. *See* Dkt. No. 1.

Plaintiff subsequently undertook efforts to collect on its judgment in this Court. First, Plaintiff served post-judgment discovery requests. *See* Plaintiff's Requests for Production in Aid of Judgment to Defendant, attached hereto as Exhibit C; Plaintiff's Interrogatories in Aid of Judgment to Defendant, attached hereto as Exhibit D; and Certified Mail, Return Receipt, and Proof of Delivery, attached hereto as Exhibit E. Despite receiving Plaintiff's post-judgment discovery requests, Defendant did not respond or provide any information relating to its assets, liabilities, or operations. After Defendant ignored Plaintiff's post-judgment discovery requests, on November 20, 2017, Plaintiff then filed its Garnishment Affidavit identifying The First State Bank (the "Bank") as holding funds belonging to Defendant to satisfy Plaintiff's judgment. *See*

Dkt. No. 11.  A week later on November 27, 2017, the summons for the garnishment was served on the Bank.  The Bank then ultimately mailed those funds to counsel for Plaintiff in response to the Garnishment Affidavit.

### C.     The Threadbare Post-Judgment Motion to Intervene.

On December 6, 2017, the Management Company appeared for the first time and filed its Motion to Intervene.  *See* Dkt. No. 17. The Motion to Intervene was filed more than a year after the initial Agreement was executed, more than six (6) months after the Underlying Lawsuit was filed, more than four (4) months after a judgment had been rendered, and well past any post-trial appeal deadlines had lapsed.   In the Motion to Intervene, the Management Company describes its relationship to Defendant as that of a lender.  *See* Motion to Intervene, Dkt. No. 17, at ¶¶ 1-6.  The Motion to Intervene does not make any mention of the Defendant's position insofar as the Motion to Intervene is concerned. *Id.* The Motion to Intervene also does not cites a single case in support of the intervention or provide the full legal standard for intervention to the Court.  *Id.*

The Motion to Intervene further does not assert any cause of action against Defendant or Plaintiff.  Instead, the Management Company attaches its proposed Motion of Intervenor for Order Denying Garnishment (the "Proposed Filing").  *See* Dkt. No. 17-2. The Proposed Filing does not bring any claims against the Defendant to foreclose on any alleged security interest. *Id.* The Proposed Filing similarly does not bring claims against Defendant for breach of the Promissory Note and Line of Credit Agreement (the "Note") between the Management Company and Defendant.  In fact the Note, which was not attached to the Motion to Intervene, only purports to create a security interest to

"secure the performance of [Defendant's] obligations to [the Management Company] as set forth in this Note." *See* Note, attached hereto as <u>Exhibit F</u>, at ¶6.1; *see also* ¶ 6.3 ("The Security Interest created hereby <u>secures the payment</u> of the indebtedness by this Note…") (emphasis added).

Like the Motion to Intervene, the Proposed Filing does not cite any case law or authority. Instead, it only generically requests that the "Court should enter an order prohibiting garnishment of assets secured by the UCC Financing Statement." *See* Dkt. No. 17-2. The Proposed Filing is completely devoid of any legal analysis that would warrant the Court granting the relief sought in the Proposed Filing.

D.  **<u>Non-Party Post-Judgment Request for Restraining Order</u>.**

On December 11, 2017, the Management Company filed its Motion for Temporary Restraining Order. *See* Dkt. No. 18. The Management Company continued to describe its relationship to the Defendant simply as a "secured creditor of Defendant." *See* Dkt. No. 18 at ¶ 2.

The Court held a short telephone conference on December 12, 2017, during which counsel for Plaintiff identified defects in the Management Company's restraining order request, including the conclusory and barebones nature of the allegations and the lack of an affidavit. The Court agreed and allowed the Management Company to file an amended motion by no later than December 15, 2017. At the telephonic conference, the Court inquired with the Management Company about the length of time the Management Company was aware of the debt owed to Plaintiff in connection with the "imminent irreparable harm" element of the extraordinary request for a restraining order. This

PLAINTIFF'S BRIEF IN RESPONSE TO MOTION OF NON-PARTY
NEWLIGHT HEALTHCARE, LLC TO INTERVENE                                          PAGE 5

inquiry of the Court also bears on the timeliness element of the Management Company's Motion to Intervene. The Amended Motion for Temporary Restraining Order filed by the Management Company on December 15, 2017,[1] however, ignores the direct question of the Court relating to the length of time the Management Company was aware of the debt owed to Plaintiff and its awareness of the Underling Lawsuit.

### E. The Management Company's True Role of Managing the Defendant and Not that of a Lender Emerges.

Plaintiff has now learned that the Management Company is not merely an unaffiliated lender as it initially and persistently represented. Rather the Management Company is directly responsible for the Defendant entering into the underlying Agreement for Plaintiff's services, the decision to not pay Plaintiff for its services, the Underlying Lawsuit, the corresponding judgment, and the failure to respond to post-judgment discovery in this lawsuit. Indeed, the underlying Agreement was signed by Tim Beard, the acting CEO of Defendant and also an employee of the Management Company. *See* Tim Beard, LINKEDIN, https://www.linkedin.com/in/tim-beard-21412a21/, Exhibit G (showing Tim Beard as CEO of Defendant and an employee of the Management Company); *see also* Agreement, Exhibit A. (showing signature by Tim Beard, the CEO of Defendant and an employee of the Management Company) Furthermore, internet searches reveal that for more than seven (7) years, the Management

---

[1] Counsel for Plaintiff intends to file a brief in response to the Amended Motion for Temporary Restraining Order within the time required under the Rules.

Company has been responsible for managing Defendant's affairs.[2]  *See* June 8, 2010, Press Release from NewLight Healthcare, LLC, http://newlighthealthcare.com/austin-texas-company-takes-management-role-at-cimarron-memorial-hospital/, Exhibit H.

Driving hospitals like Defendant into insolvency and towards lawsuits is apparently nothing new for The Management Company.  Indeed, prior to the Management Company's stewardship over Defendant, the then-controlling executives of Defendant expressed concern over the track-record of the executives at the Management Company for laying off hospital employees, running up millions of dollars in debt, and ultimately forcing healthcare facilities to shut down.  *See* Guymon Daily Herald Article, *http://www.guymondailyherald.com/content/hospital-vote-newlight-wednesday-night*, Exhibit I.  ("Blackhawk closed the hospital in Bastrop, and was sued five days later for a debt of more than $2 million.") ("Newlight President Todd Biederman was involved with Blackhawk").

The Management Company's nondisclosure of its role is more than a lack of candor, it also is an intentional effort to evade its burden in the Motion to Intervene to show it has timely filed its Motion to Intervene.

F. **The Management Company and Defendant's Joint Efforts to Stifle Information to Plaintiff and the Court.**

Perhaps even worse than the Management Company's strategic non-disclosures, the Management Company and the Defendant have joined forces to stifle the ability of Plaintiff to obtain information relating to their relationship, the alleged security interest

---

[2] Therefore, on information and belief, any financial hardships complained of by Defendant were caused and created by the Management Company.

**PLAINTIFF'S BRIEF IN RESPONSE TO MOTION OF NON-PARTY**
**NEWLIGHT HEALTHCARE, LLC TO INTERVENE**                                          **PAGE 7**

held by the Management Company, the assets of the Defendant, and the vague and ambiguous relief sought by the Management Company.

The Defendant, acting through the Management Company, refused to comply with their post-judgment discovery obligations. *See* Plaintiff's Motion to Compel Post-Judgment Discovery and for Attorneys' Fees at Dkt. No. 22. At this time, the post-judgment discovery is eighty-one (81) days past due. Had Defendant timely and properly responded to the post-judgment discovery requests, Plaintiff would have known the time period during which the Management Company was aware of the debt owed to Plaintiff and the Underlying Lawsuit, Plaintiff would have had access to Defendant's bank statements, Plaintiff would have known the identification of Defendant's accounts receivable, and Plaintiff would have gained evidence of the true relationship between Defendant and the Management Company. Even after formal requests were made to Defendant and ignored, additional informal efforts were made to counsel for the Management Company. *See* e-mail chain from J. Kring to B. Wilson from December18-20, 2017, <u>Exhibit J</u>. The Management Company, however, refused and continues to refuse to produce any of the information requested, including information directly relating to the Court's inquiry of the time period which the Management Company was aware of the money owed to Plaintiff.

Furthermore, while the Management Company broadly claims a "security interest" in accounts receivable and proceeds therefrom, the Management Company has refused to provide the information necessary to determine whether or not the Management Company is over-secured. Specifically, the Management Company has refused requests

for bank records and the very accounts receivable they purport to assert a security interest over.

## III.
### ARGUMENT AND AUTHORITIES

**A.     Legal Standard for Intervention.**

Rule 24 provides for intervention as a matter of right and on a permissive basis. FED. R. CIV. P. 24(a) (intervention of right), and 24(b) (permissive intervention). A movant may intervene as a matter of right if: "(1) the [motion] is timely, (2) the [movant] claims an interest relating to the property or transaction which is the subject of the action, (3) the [movant's] interest may be impaired or impeded, and (4) the [movant's] interest is not adequately represented by existing parties." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.,* 407 F.3d 1091, 1103 (10th Cir. 2005); *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.,* 619 F.3d 1223, 1231 (10th Cir. 2010). The requirements of permissive intervention are similar.   For permissive intervention, a court has discretion to permit a party to intervene who: (1) files a timely motion, and (2) "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(3). Subsection (b)(3) adds that "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

Additionally, a motion to intervene whether under Rule 24(a) or Rule 24(b) must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought. FED. R. CIV. P. 24(c).

**B.    The Post-Judgment Motion to Intervene is Untimely.**

Both Rule 24(a) and Rule 24(b) require that a motion to intervene be filed timely. "The issue of the timeliness of a motion to intervene is a threshold issue." *United States v. Ritchie Special Credit Invs., Ltd.,* 620 F.3d 824, 832 (8th Cir. 2010). A motion to intervene after a judgment is entered is strongly disfavored. "The general rule is that motions for intervention made after entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner." *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113, 116 (8th Cir. 1976).

The Management Company has not made a "strong showing" to intervene post-judgment and thwart Plaintiff's efforts to collect on its judgment. While the Management Company has done its best to shield its relationship with the Defendant (and all other relevant information), it is abundantly clear that the Management Company was intimately involved in this matter since the very first day Plaintiff contracted with Defendant. But rather than paying Plaintiff's invoices or seeking to intervene before the judgment was entered, the Management Company lied and waited. Since the start, the Management Company was involved and did nothing to exercise any right to intervene. The Management Company signed the underlying Agreement executed by Defendant. *See* Agreement, Exhibit A (showing signature by Tim Beard, the CEO of Defendant and an employee of the Management Company). Then after the Underling Lawsuit was filed, the Management Company still never sought to intervene. The Management Company further never responded when the sister-state judgment was filed in this Court. The

Management Company, through the Defendant, was aware Plaintiff was executing on the judgment and the Management Company still did not intervene when post-judgment discovery requests were served. Instead, the Management Company waited. The Tenth Circuit recognizes that "'[w]hen the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.'" *Edmondson*, 619 F.3d at 1232 (10th Cir. 2010) (quoting 7C Charles A.Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916, at 539–40 (3d ed. 2007)); *see also Southern Utah Wilderness Alliance v. Kempthorne,* 525 F.3d 966, 971 n.1, n.5 (10th Cir. 2008) (denying intervention for purpose of a merits appeal; finding intervention for the purpose of filing post-judgment motions untimely even though motion was filed before the appeal time ran.)

The Management Company offers no explanation for its failure to seek to intervene earlier. The Management Company has further actively thwarted discovery efforts directed at addressing the common-sense requirement of prohibiting a non-party from intervening post-judgment when it was involved from the beginning and chose to slumber on its rights. Accordingly, on this ground alone, the Court should deny the Motion to Intervene and the analysis should stop here.

C.  **The Post-Judgment Motion to Intervene Fails to Comply with Rule 24(c).**

The Management Company's Motion to Intervene also independently fails because it does not attach a pleading that sets out any claim or defense it seeks to assert. The purpose of Rule 24(c) requiring an accompanying "pleading setting forth the claim of defense is to enable to the Court to determine whether the applicant has the right to

intervene." *Miami Cnty. Nat. Bank of Paola, Kan. v. Bancroft,* 121 F.2d 921, 926 (10th Cir. 1941) (affirming denial of intervention where no pleading was filed with the application, as required by Rule 24(c)). The importance requiring a contemporaneous pleading is heightened where intervention is sought post-judgment. As one court in this Circuit has noted "specificity is particularly important, where, as here, a motion to intervene is filed after a final judgment is entered." *Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, No. 09-4158-SAC, 2011 WL 4688857, at * 4 (D. Kan. Oct. 5, 2011).

The Management Company does not come close to meeting this exacting standard. The Proposed Filing does not contain any pleadings asserting any claims or defenses whatsoever. Instead, it generically requests the "Court should enter an order prohibiting garnishment of assets secured by the UCC Financing Statement." *See* Dkt. No. 17-2. But this conclusory request for relief is not tied to a legal cause of action or claim. It further is devoid of a citation to authority for the relief sought. The Proposed Filing does not cite to a single case, rule, or legal theory that would warrant the conclusion requested.

Even if the Court were to string together the Management Company's numerous filings and amended filings in an effort to locate a claim that could conceivably be brought by a future amendment, the only conceivable legal theory available to the Management Company would be against Defendant for breaching the Note. *See* Note at ¶ 6.3 ("The Security Interest created hereby <u>secures the payment of the indebtedness</u> by this Note…") (emphasis added). But again, the Management Company does not make any such claim on the Note against the Defendant.

The Proposed Filing is completely devoid of any pleading asserting a claim or defense or any legal analysis that would allow the Management Company to reach the conclusion it seeks, and therefore, the Motion to Intervene should be denied. *See Tri-State Truck*, 2011 WL 4688857, at * 4 (motion to intervene failed to include specificity under Rule 24(c) where it vaguely referenced request for post-judgment relief); *cf. Miami Cnty.*, 121 F.2d at 926; *In re S.E.C.,* 253 Fed. App'x 752, 755 (10th Cir. 2007) (failure to attach the 24(c) pleading may warrant denying the motion as procedurally inadequate); *Alvarado v. J.C. Penney Co., Inc.,* 997 F.2d 803 (10th Cir. 1993) (discussing notice purpose of the requirement).

D.   **The Post-Judgment Motion to Intervene would Prejudice Plaintiff.**

The Motion to Intervene should further be denied because allowing the Management Company to intervene post-judgment would gravely prejudice Plaintiff. The starting point is the general rule that "[p]ostjudgment motions to intervene are generally disfavored because their lateness is prejudicial to the parties and disruptive to the Court." *Tri-State Truck*, 2011 WL 4688857, at * 4. Here, the same individuals are responsible for wearing two hats, one of the Management Company and one of Defendant. They then switch depending on whatever suits their own self-interest.[3] Allowing the Management Company to intervene at this late stage wearing its "Management Company" hat after being intimately involved with Defendant would only serve to further delay and prejudice the rights of Plaintiff to collect on its judgment.

---

[3] The Management Company is putting its own self-interest above the interest of Defendant by increasing the costs for which Defendant is responsible to Plaintiff and further tortuously interfering with Defendant's Agreement with Plaintiff.

Moreover, on information and belief, the Management Company made the decision to direct Defendant to pocket the revenues generated from Plaintiff's services rather than paying Plaintiff thereby creating the need for the Underlying Lawsuit. Under the stewardship of the Management Company, Defendant has struggled financially thereby hindering Plaintiff's prospects for collecting on its judgment. Forcing an unaffiliated party like Plaintiff to bear to burden and risks of an uncollectible judgment for the Management Company's failings would be unjust and prejudicial to Plaintiff. Plaintiff has a legal right to exercise its post-judgment collection efforts and be paid for the services it provided. It has been more than a year since the Agreement was executed by the Management Company, on behalf of the Defendant, and the Plaintiff deserves to be paid for its work and on the judgment.

E.   **The Management Company Has Not Shown it Would be Harmed.**

The Management Company has not showed it would be prejudiced by the denial of its Motion to Intervene. First, the Management Company's security interest in the Note exists only to secure the payment obligations under the Note. *See* Note at ¶ 6.3 ("The Security Interest created hereby secures the payment of the indebtedness by this Note…") (emphasis added). There has not been any claim by the Management Company against Defendant for breach of the Note or to foreclose on any collateral. Second, the Management Company has not indicated it would be under-secured by Plaintiff collecting on its judgment. For example, if the Management Company brought claims against the Defendant for breach of the Note (which has not happened) alleging $100,000.00 as secured debt and the Defendant's accounts receivable and proceeds

therefrom exceeded the sum of: (i) the amount of the garnished funds, and (ii) the accounts receivable and proceeds therefrom, then the Management Company would not suffer any harm whatsoever. The Management Company, however, has concealed the production of documents and information that would provide this information.

On balance, the ability of Plaintiff to exercise its post-judgment right to collect on its judgment far outweighs the Management Company's theoretical claim of damage caused by its own financial mismanagement of Defendant resulting in the theoretical breach of the Note and the possibility in the future that insufficient accounts receivable and proceeds therefrom exist to satisfy any then-existing debt. Any harm to the Management Company is tenuous and theoretical.

## IV.
### CONCLUSION

The Management Company's Motion to Intervene should be denied. First, the Management Company's post-judgment Motion to Intervene is clearly untimely. Second, the Management Company's Motion to Intervene does not come close to meeting the exacting standard for pleading a claim or defense in a post-judgment motion to intervene. Third, Plaintiff would be prejudiced if the Management Company were allowed to swoop in at the last minute and undercut the efficacy of Plaintiff's judgment. Fourth, and finally, the Management Company has not shown it would be harmed by the denial of its Motion to Intervene. For all of these reasons independently, the Motion to Intervene should be denied.

Respectfully submitted,

*/s/ Jacob B. Kring*
**Jacob B. Kring** (admitted *Pro Hac Vice*)
Texas State Bar No. 24062831

**HEDRICK KRING, PLLC**
1700 Pacific Ave., Suite 4650
Dallas, Texas 75201
Telephone:  (214) 880-9600
Telecopier:  (214) 481-1844
E-mail: jacob@hedrickkring.com

**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of December, 2017, I served the above and foregoing instrument via ECF filing and/or Certified Mail, Return Receipt Requested to:

Cimarron County Health Authority *d/b/a* Cimarron Memorial Hospital
100 South Ellis Street
Boise City, Oklahoma 73933

Brandon Powell Wilson
Clinton D. Whitworth
WHITWORTH, WILSON & EVANS, PLLC
3847 South Boulevard, Suite 100
Edmond, Oklahoma 73013

*/s/Jacob B. Kring*
Jacob B. Kring