## Delta Locum Tenens Service Agreement



This Locum Tenens Service Agreement ("Agreement") is entered into between Cimarron Memorial Hospital ("Client") and Delta Locum Tenens, LLC (DLT).

1. DLT agrees to refer healthcare providers to Client for temporary assignments. DLT does internal verifications of each provider prior to submission to Client. It is the Client's responsibility to complete primary source verifications in accordance to the by-laws of Client's Facility to ensure that provider is compliant with Client's qualification standards. DLT maintains medical malpractice liability insurance for providers during each assignment with limits of one million ($1,000,000) per occurrence and three million ($3,000,000) aggregate per year or such limit amounts as required by state law, or enroll and participate in the state programs (i.e. State Fund) as required by DLT's insurance policy underwriter. DLT does not employ any provider, and providers provide healthcare services to Client as independent contractors.

2. Client retains all revenue and rights to billings for healthcare service rendered by the provider while on assignment. Client determines the type of services performed, performance standards, hours and location of service rendered. Client does not control provider's independent medical judgment, diagnoses or procedure methodology, which is based on the provider's professional medical training.

3. Rates are based on the job parameters as specified by Client as well as the provider's experience and skill set. The rates are specified upon presentation of DLT provider to Client and further identified in the Assignment Detail Letter (ADL). The ADL is a separate document that specifies the parameters of the assignment and is binding in conjunction with this Agreement. From DLT's submission of an ADL to Client, Client has 48 hours to object in writing to its terms. If Client does not make a written objection to the terms of the ADL within 48 hours from submission, Client is deemed to have accepted the terms of the ADL and the assignment. In the event that Client makes a timely objection to the ADL and requests that such objection be cured by DLT, DLT shall cure such defect and return a corrected ADL to Client. Client has 48 hours from delivery of corrected ADL to object to the terms of the corrected ADL, and if no written objection is made within a 48 hour period, then Client is deemed to have accepted the terms of the corrected ADL and the assignment. So long as no timely written objection to an ADL is made by Client that remains uncured, Client agrees to pay all amounts set out in the ADL, including but not limited to, the provider's hourly/daily rate, applicable call rates, holiday rates, premium rates, and all other expenses/costs outlined in the ADL, (including, but not limited to, per diem stipend, rental car, lodging, and airfare). Fractional hours may be pro-rated and rounded up to the nearest fifteen-minute increment. Client designates an authorized agent to sign or electronically approve Work Logs verifying provider's hours worked and expenses. Client is invoiced weekly. Client's obligation to pay DLT under this Agreement is independent of Physician's coding or charting of records to facilitate Medicare, Medicaid, or 3rd party insurance billing.

4. Client is responsible for workplace safety and will indemnify and defend provider and DLT from all claims and costs that arise from unsafe workplace conditions, occupational safety or health law violations, or acts or omissions of Client's personnel.

5. Client agrees to notify DLT within forty-eight hours if Client previously received the same provider for the same assignment from another party prior to DLT's submission. If said notice is not given, then DLT is deemed to have presented provider to Client.

6. Client agrees to pay DLT a conversion fee should it, or any third party introduced to provider by Client, employ or contract with outside the time and scope of the ADL for the later of: two years from the date of DLT's presentation or two years from the date last worked for client. Conversion fees are twenty-six thousand dollars ($26,000) for Nurse Practitioners and Physician Assistants, thirty-two thousand dollars ($32,000) for CRNAs, Family Practice, Internal Medicine, Psychiatry, Hospitalist and Occupational Medicine and forty-four thousand dollars ($44,000) for all other specialties upon acceptance by provider and/or performing services for Client. DLT's exclusive rights regarding provider referral and/or staffing fees survive the termination of this agreement.

7. If Client is dissatisfied with the quality or performance of a provider or, should a provider breach the Agreement between provider and Client during an assignment coordinated by DLT, Client has the right to immediately suspend provider's services and immediately notify DLT in writing. DLT will make its best effort to remedy the problem or replace the provider. If DLT does not provide a resolution, Client has the right to terminate the assignment as specified in the ADL. Termination of an assignment does not represent termination of this Agreement, and Client is still responsible to DLT for payment of services rendered by provider and associated expenses.

8. After acceptance of an ADL, if Client cancels the assignment within thirty days prior to assignment start date, or after initiation of the assignment, without cause, then Client is responsible for payment for thirty calendar days from the date cancellation is given as outlined in the ADL plus any provider travel and licensure expenses incurred by DLT on behalf of Client.

9. Any transaction tax, including any sales or use tax and gross receipts tax, imposed by any state or local government or taxing authority associated with this contract, shall be the responsibility of Client.

10. All payments are due upon receipt of invoice. Client reimburses DLT for any charges DLT incurs due to insufficient funds of a returned check from Client. Client further agrees to reimburse DLT for reasonable attorney's fees and collection costs in the event it becomes necessary to collect fees owed to DLT.

11. The term of this Agreement is one year from the effective date and automatically renews on the one year anniversary of the effective date unless otherwise terminated. This Agreement may be modified, upon mutual consent, or terminated by either party with thirty days written notice. All provisions of this Agreement remain enforced after termination of this Agreement.

12. This Agreement is governed by and interpreted in accordance with the laws of the state of Texas. It is executed in Dallas County, Texas, and the Client consents to the exclusive jurisdiction of the court in Dallas County, Texas, for any action that may arise in connection to this Agreement.

_[signature]_ **Signature**
Tim Beard          CEO    **Print Name / Title**
Cimarron Memorial Hospital
8-15-16            **Date**

_[signature]_
Delta Locum Tenens, LLC

Chris McDonald
**Print Name**

Four Hickory Centre | 1755 Wittington Place, Suite 175  Dallas, TX  75234 | (877) 456-2667 | www.DeltaLocums.com

**APP. 001**

# EXHIBIT A