**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OFFERED FOR SALE EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER SAID ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN AVAILABLE EXEMPTION FROM SUCH REGISTRATION REQUIREMENTS.**

### PROMISSORY NOTE AND LINE OF CREDIT AGREEMENT

As of October 1, 2016

For value received, **Cimarron County Health Authority**, an Oklahoma community hospital public trust authority (the "Borrower"), with an address in care of Cimarron Memorial Hospital, 100 Ellis Avenue, Boise City, Oklahoma 73933, hereby unconditionally promises to pay to the order of **NewLight Healthcare, LLC**, a Texas limited liability company ("Payee"; Payee and any other person who becomes holder of this Promissory Note hereafter being referred to herein as the "Lender"), any and all outstanding amounts due for any funding the Lender provides to Borrower hereunder, all as set forth below. This Promissory Note and Line of Credit Agreement and any note or other credit agreements issued in substitution for this agreement are referred to herein as this "Note." Payment of all amounts due hereunder shall be made in lawful money of the United States of America in immediately available funds at the office of the Lender located at 3267 Bee Caves Road, Suite 517, Austin, Texas 78746, or at such other location as the Lender hereof shall from time to time designate in writing to the Borrower.

Section 1.    *Funding*

    1.1    Financing Amount.    Pursuant to the terms of this Note, the Borrower agrees to pay the Lender the principal sum of Two Hundred Eighty-Eight Thousand Fifty-Eight and 23/100 Dollars ($288,058.23) and future amounts the Borrower may owe to the Lender for services rendered ("Financing Amount"), plus interest and other amounts as set forth herein.

    1.2    Line of Credit.

        1.2.1    In addition to the Financing Amount, the Lender further agrees to make available, for a period of up to one year from the effective date of this Note ("LOC Term"), a loan to the Borrower in the form of a line of credit (the "LOC") and in an amount of up to Two Hundred Thousand and 00/100 Dollars ($200,000.00). During the LOC Term, the Borrower may request and receive incremental advances against the LOC, as further set forth in Section 1.2.2 (each an "Advance" and, collectively, the "Advances"); provided, however, that in no event shall the aggregate amount of any and all such Advances exceed Two Hundred Thousand and 00/100 Dollars ($200,000.00).

        1.2.2    The Borrower may request Advances against the LOC by submitting a written request for an Advance to the Lender's designated representative, at the address listed above, or such other address as the Lender may designate from time to time (a "Request"). The Borrower shall submit a Request to the Lender at least five (5) business days before the requested disbursement date for such Advance. In addition, the Borrower shall timely provide any and all documentation related to the Request, which may include financial information, as the Lender may reasonably request, and the Borrower further agrees that the Borrower's representative shall timely

meet with the Lender's representative to discuss any Request, as the Lender may request. Any Request shall be subject to the Lender's review and approval, which approval shall not be unreasonably withheld or delayed. The Borrower agrees that no provision of this Note shall require the Lender to approve and fund any Request. Additionally, the Lender shall have no obligation whatsoever hereunder to approve or fund any Request if an Event of Default (as defined below) has occurred. This Note represents an arrangement that allows the Borrower to obtain Advances, not to exceed $200,000.00 outstanding from time to time, subject and pursuant to the terms herein, without giving the Lender a separate promissory note for each Advance, subject to the terms herein. The date and amount of each Advance from the Lender to the Borrower shall be recorded on the Lender's account records, and interest shall begin to accrue on such Advanced amount, pursuant to the terms set forth herein, as of such Advance date. The Borrower agrees that the Lender's account records will constitute prima facie evidence of the Borrower's obligations to the Lender under this Note for any and all such Advances.

       1.3    The aggregate of the principal of the Financing Amount and any Advances as may be outstanding at any time under this Note shall be collectively referred to herein as the "Principal".

Section 2.    *Interest*

Subject to the following paragraph, the outstanding Principal of this Note shall accrue interest while unpaid commencing on the date hereof, as well as of the date of any Advance, as applicable, at a fixed rate per annum (computed on the basis of a 365/366-day year and actual number of days elapsed) equal to eight and 75/100 (8.75%) percent.

If an Event of Default (as defined below) has occurred and is continuing (irrespective of whether the obligations hereunder have been accelerated), the interest payable on this Note shall, at the Lender's option, increase by the lesser of (i) 200 basis points, or (ii) the maximum amount allowed by law (either, the "Default Rate") and accrue at such Default Rate from the original date such Event of Default occurred until full payment is received or such Event of Default has been cured, as applicable. If all amounts due on the Maturity Date (as defined below) are not paid in full on the Maturity Date, such unpaid amounts shall accrue interest at the Default Rate. Interest at the Default Rate also shall accrue on any judgment the Lender obtains in connection with enforcing or collecting on this Note until such judgment amount is paid in full. If the Default Rate exceeds the maximum rate which may be charged to or collected from the Borrower under applicable law, the maximum rate permitted to be charged under such law shall be the Default Rate.

Section 3.    *Terms of Payment*

All Principal and accrued interest due under this Note shall be due and payable in equal monthly installments commencing on or after November 1, 2016, and continuing monthly thereafter for the succeeding twelve (12) consecutive months, with the final payment due exactly one calendar year after the commencement date (the "Maturity Date"), as subject to acceleration upon the occurrence of any Event of Default (as defined below). Following the expiration of the LOC Term, the Lender agrees to provide the Borrower with a payment schedule summarizing the payments described in the foregoing; provided, however, that the delivery of such schedule shall not be a condition precedent to any obligation of the Borrower hereunder. Notwithstanding any other term of this Note, any remaining unpaid balance as of the Maturity Date shall become immediately due and payable.

If any payment of interest or Principal hereunder is delinquent, then the Borrower shall pay to the Lender, in addition to all other amounts due hereunder, a one-time late charge of ten percent (10%) of the amount of the overdue payment, which amount shall become due immediately upon the occurrence of any such delinquency. The imposition of a late charge shall not be deemed to extend the time for payment or to constitute a "grace period" or "cure period." Imposition of a late charge is not contingent upon the giving of any notice, or the lapse of any cure period.

If any payment on this Note becomes due and payable on a day other than a Business Day (as hereinafter defined), then the payment date thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest thereon shall be payable at the then applicable rate during such extension. For purposes of this Note, "Business Day" means any day other than a Saturday, Sunday or other day on which banks are required or authorized to be closed for business in Austin, Texas.

Section 4.   *Optional Prepayments*

At the Borrower's option, all or any portion of the unpaid Principal of, and accrued interest on, the indebtedness represented by this Note may be prepaid from time to time without premium, penalty or payment of unearned interest. The amount of each prepayment described in this Section 4 shall be applied first to accrued and unpaid interest, second to any other amounts owed under this Note, including without limitation costs of collection, and the remainder to outstanding principal.

Section 5.   *Events of Default*

5.1   Either of the following events shall constitute an event of default hereunder (an "Event of Default") (whether any such event shall be voluntary or involuntary or come about or be effected by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any governmental authority), and either such Event of Default shall continue so long as it shall not have been remedied:

5.1.1   The Borrower's failure to pay (a) the Principal hereunder when due, or (b) any interest, fees or other amount due, under this Note when due; and

5.1.2   The Borrower's becoming bankrupt or making an assignment for the benefit of creditors or consenting to the appointment of a trustee or receiver; or a trustee or a receiver shall be appointed for the Borrower or for substantially all of the Borrower's respective property and, if appointed without the Borrower's consent, shall not be dismissed or stayed within a period of thirty (30) days; or bankruptcy, reorganization or insolvency proceedings shall be instituted by or against the Borrower and, if instituted against the Borrower, shall not be dismissed or stayed for a period of thirty (30) days.

5.2   Upon the occurrence of an Event of Default hereunder, (a) if such event is an Event of Default specified in Section 5.1.1, the Lender may, by notice to the Borrower, declare the outstanding Principal of, and accrued interest on, this Note to be immediately due and payable, whereupon the outstanding Principal of, and accrued interest on, this Note shall become and be immediately due and payable; and (b) if such event is an Event of Default specified in Section 5.1.2, automatically, and without the necessity of any notice or declaration by or to the Borrower, the outstanding Principal of, and accrued interest on, this Note shall be immediately due and payable.

**APP. 054**

(c)     When an Event of Default exists, the Lender may exercise any or all of the rights and powers and pursue any and all of the remedies available to it hereunder, and shall have and may exercise any and all rights and remedies available under any other provision of law or in equity. The Lender's delay or failure to exercise any right shall not be deemed a waiver of such right or any other right available to the Lender.

Section 6.     *Security Interest*

6.1.    Security Interest. The Borrower hereby creates and grants to the Lender a valid and enforceable first priority security interest (the "Security Interest") in the collateral described and referred to in Section 6.2 below to secure the performance of the Borrower's obligations to the Lender as set forth in this Note.

6.2.    Collateral. The collateral in which the Security Interest is created shall include all present and future accounts receivable of the Borrower and the proceeds therefrom (the "Collateral").

6.3.    Obligations Secured. The Security Interest created hereby secures the payment of the indebtedness evidenced by this Note, and performance and discharge of each and every obligation, covenant and condition on the Borrower's part to be performed on this Note, including any and all modifications, extensions, renewals or accords and satisfactions thereof.

6.4.    Release of Security Interest. Upon satisfaction of all of the Borrower's obligations set forth in this Note, the Lender shall release the Security Interest in the Collateral.

Section 7.     *Governing Law and Jurisdiction*

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, NOTWITHSTANDING ANY CONFLICT-OF-LAW PROVISIONS TO THE CONTRARY. ANY LEGAL ACTION RELATING TO THIS NOTE, OR ANY OTHER AGREEMENT, DOCUMENT, OR INSTRUMENT DELIVERED PURSUANT TO THIS NOTE SHALL BE COMMENCED AND MAINTAINED EXCLUSIVELY BEFORE ANY APPROPRIATE STATE OR FEDERAL COURT OF RECORD LOCATED IN TRAVIS COUNTY, TEXAS. THE BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE BORROWER AGREES THAT THE LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT OF THE BORROWER IRREVOCABLY TO WAIVE TRIAL BY JURY AND THAT ANY PROCEEDING WHATSOEVER BETWEEN THE BORROWER AND THE LENDER RELATING TO THIS NOTE SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

Section 8.     *Compliance With Law*

This Note shall be construed so as to contain and be consistent with all mandatory provisions and requirements of applicable laws, which provisions and requirements are hereby incorporated herein by reference. If any one or more of the provisions contained in this Note shall be determined to be invalid, illegal or unenforceable in any respect for any reason, then the validity, legality and enforceability of any such provision in any other respect and the remaining provisions of this Note shall not, at the election of the party for whom the benefit of the provision exists, be in any way impaired.

Section 9.     *Miscellaneous*

THE BORROWER HEREBY WAIVES PRESENTMENT, DEMAND FOR PAYMENT, NOTICE OF DISHONOR, NOTICE OF PROTEST, PROTEST AND ANY AND ALL OTHER NOTICES OR DEMANDS IN CONNECTION WITH THE DELIVERY, ACCEPTANCE, PERFORMANCE, DEFAULT, OR ENFORCEMENT OF THIS NOTE, EXCEPT THE WRITTEN NOTICE REFERRED TO IN SECTION 5.2(a) ABOVE. ANY FAILURE TO EXERCISE OR ANY DELAY BY THE BORROWER IN EXERCISING ANY RIGHT HEREUNDER SHALL NOT BE CONSTRUED AS A WAIVER OF SUCH RIGHT OR ANY OTHER RIGHT BY THE LENDER.

No failure to accelerate or demand payment of the indebtedness evidenced hereby due to an Event of Default hereunder, and no indulgence that may be granted from time to time, shall be construed (i) as a novation of this Note, as a reinstatement of the indebtedness evidenced hereby, or as a waiver of such right of acceleration or of the Lender's right thereafter to make demand for payment or otherwise to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration, or to demand payment, or any other right granted hereunder or by the laws of the State of Texas. The Borrower hereby expressly waives the benefit of any statute or rule of law or equity now provided or that may hereafter be provided that would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note shall operate to release, discharge, change or affect the original liability of the Borrower under this Note, either in whole or in part, unless the Lender agrees otherwise in writing.

This Note may be changed only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

The Borrower further agrees that if this Note or any portion of the debt evidenced hereby is collected by law or through an attorney at law, then the Borrower shall pay all costs of collection, including, without limitation, reasonable attorneys' fees and all other reasonable costs of collection, which, if unpaid after the Lender's demand, shall be added to the principal balance of this Note and accrue interest as provided herein.

None of the Lender's rights or remedies are to be deemed waived or affected by failure or delay to exercise the same. All remedies conferred upon the Lender by this Note or any other instrument or agreement shall be cumulative and none is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

This Note has been negotiated by the parties hereto and their attorneys, if any, and the language hereof will not be construed for or against either party.

This Note shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and permitted assigns; provided, however, that the Borrower shall not be permitted to assign its obligations under this Note without the prior written consent of the Lender.

Time is of the essence of this Note.

*[signature page attached]*

**APP. 056**

[Signature Page of Note]

Executed by the Borrower and the Lender to be effective as of the date first above written.

BORROWER:

CIMARRON COUNTY HEALTH AUTHORITY

By: *Paul Toon* (signature)
Print Name: Paul Toon
Title: Chairman
Date: 9/19/16

LENDER:

NEWLIGHT HEALTHCARE, LLC

By: *Todd F. Biederman* (signature)
Print Name: Todd F. Biederman
Title: President and CEO
Date: 9-21-2016

2232591v4